JOHN W. MANGHAM AND VIRGINIA B. MANGHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mangham v. Commissioner
Docket No. 10763-77.
United States Tax Court
T.C. Memo 1980-280; 1980 Tax Ct. Memo LEXIS 306; 40 T.C.M. (CCH) 788; T.C.M. (RIA) 80280; July 29, 1980, Filed William R. Frazier, for the petitioners. Lewis J. Hubbard, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' joint Federal income taxes: Additions to tax
Year
Deficiency
Sec. 6653(a) [1]
1970
$1,369.93
$ 68.50
1971
2,399.01
119.95
1972
1,077.86
53.89
1973
3,961.71
198.09
1974
4,452.10
222.61
The issues remaining for our decision are: 1. Whether the receipt of $28,880 in 1973 and $75,000 in 1974 by petitioner John W. Mangham from two limited partnerships in which he was a general partner are loans by the partnership *308 to him under section 707(a), distributions of partnership property under section 731(a), guaranteed payments under section 707(c) or income under section 61. 2. If the payments do constitute distributions of partnership property under the provisions of section 731(a), what is the correct basis of petitioner's partnership interests in the two limited partnerships. 3. Whether petitioner John W. Mangham failed to include $2,838.23 of insurance commissions in his gross income for 1973. 4. Whether petitioners are liable for the additions to tax under section 6653(a) for each of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. John W. Mangham and Virginia B. Mangham (petitioners) are husband and wife who resided in Stuart, Florida at the time their petition was filed in this case. They filed joint Federal income tax returns for the years 1970 through 1974 with the Southeast Internal Revenue Service Center, Chamblee, Georgia. Receipts from Limited Partnerships
On June 7, 1973, a limited partnership was formed pursuant to the Limited Partnership Statutes of Florida under the name of Search Properties X Limited (Search *309 X). John W. Mangham (hereinafter referred to as petitioner) and Dave Townsend were the general partners. The limited partnership was formed for the purpose of developing and selling a residential condominium project on twelve acres of lakefront property near Winter Haven, Florida. Ninety-four condominium units were planned. David Townsend and James W. Scholl (one of the limited partners) owned the twelve acres and contributed the property to the limited partnership upon its formation. The Articles of Limited Partnership of Search Properties X provide in pertinent part: * * *
ARTICLE III Principal Place of Business
The principal office of the limited partnership shall be located at 2075 S. Lake Cannon Drive, Winter Haven, Florida, 33880, but the partnership shall have the power to relocate its principal office or to establish branch offices at other places within or without the State of Florida as may be determined and deemed expedient. ARTICLE IV Name and Place of Residence of Partners
(a) The name and place of residence of each General Partner are as follows: Name
Place of Residence
John W. Mangham
2075 S. Lake Cannon Drive
Winter Haven, Florida 33880
David Townsend
4263 Wildwood
Richland, Michigan 49083
*310 (b) The name and place of residence of each Limited Partner are as follows: Name
Place of Residence
James W. Scholl
3406 Meadow Cross
Kalamazoo, Michigan 49001
David Townsend
4263 Wildwood
Richland, Michigan 49083
Edward J. Klein
6251 S. 6th Street
Kalamazoo, Michigan 49009
Lester L. Spade
825 White Pidgeon Road
as Trustee for The
Constantine, Michigan 49083
Lester L. Spade Trust
Eugene W. Zylstra
Post Office Box 31
Richland, Michigan 49083
Gerald S. Eplee
2926 Portage
Kalamazoo, Michigan 49001
Thomas L. Fortenbacher
2616 Sunnybrook
Kalamazoo, Michigan 49001
Gunnard M. Johnson
5390 Glenharbor Drive
Kalamazoo, Michigan 49002
Fred P. Burrer
10742 Portage Road
Portage, Michigan 49081
* * *
ARTICLE VI Initial Contributions to the Limited Partnership
The contributions agreed to be made upon the execution of this Agreement from the partners to the limited partnership are as follows: Name
Amount
Units
John W. Mangham, General Partner
$ 1,000
David Townsend, General Partner
200
David Townsend, Limited Partner
10,240
20.76
James W. Scholl, Limited Partner
26,120
52.24
Edward J. Klein, Limited Partner
15,000
30.0
Lester L. Spade, as Trustee for
The Lester L. Spade Trust,
Limited Partner
7,500
15.0
Eugene W. Zylstra, Limited Partner
2,500
5.0
Gerald S. Eplee, Limited Partner
5,000
10.0
Thomas L. Fortenbacher, Limited
Partner
5,000
10.0
Gunnard M. Johnson, Limited
Partner
5,000
10.0
Fred P. Burrer, Limited Partner
5,000
10.0
total/
$82,560
163.00
*311 The limited partnership interest shall be comprised of a total of one hundred sixty-three (163) units at a per-unit price of $500.
* * *
ARTICLE IX Return of Contributions to Limited Partner
Return of contributions shall be only as provided in Articles XV and XVI hereof. ARTICLE X Capital Interest
(a) The initial capital of the partnership shall be $82,700. (b) The initial capital interest in the partnership of each General Partner shall be as follows: John W. Mangham $1,000 David Townsend 200 (c) The initial capital interest in the partnership of each Limited Partner shall be as follows: Name
Amount
Units
David Townsend
$10,000
20.76
James W. Scholl
25,000
52.24
Edward J. Klein
15,000
30.0
Lester L. Spade, as Trustee for
The Lester L. Spade Trust
7,500
15.0
Eugene W. Zylstra
2,500
5.0
Gerald S. Eplee
5,000
10.0
Thomas L. Fortenbacher
5,000
10.0
Gunnard M. Johnson
5,000
10.0
Fred P. Burrer
5,000
10.0
(d) The capital interest in the partnership of each Limited Partner shall terminate, and he shall cease to be a Limited Partner when he has received distributions from the partnership equal to $1,167 *312 for each unit of limited partnership interest owned by him. The partnership interest of each limited partner shall terminate as follows: Name
Units
Distributions
David Townsend
20.76
$24,226.92
James W. Scholl
52.24
60,964.08
Edward J. Klein
30.0
35,010.00
Lester L. Spade, as Trustee
for The Lester L. Spade
Trust
15.0
17,505.00
Eugene W. Zylstra
5.0
5,835.00
Gerald S. Eplee
10.0
11,670.00
Thomas L. Fortenbacher
10.0
11,670.00
Gunnard M. Johnson
10.0
11,670.00
Fred P. Burrer
10.0
11,670.00
TOTAL
$190,221.00
(e) Until each Limited Partner has received distributions from the partnership equal to $1,167 for each unit of limited partnership interest owned by him, the General Partners shall not be entitled to any distributions, except as provided in paragraph (h) of Article XI hereof. (f) After each Limited Partner has received distributions from the partnership equal to $1,167 for each unit of limited partnership interest owned by him, the interest of the Limited Partners shall terminate, and General Partners shall receive all further distributions from the partnership at such times and in such amounts as they may determine among *313 themselves. ARTICLE XI Profits and Losses
(a) Until the total distributions from the partnership to each Limited Partner are equal to $1,167 for each unit of limited partnership interest owned by him, the Limited Partners shall receive 100% of the net profits of the partnership (except that General Partners shall receive advances against future profits as set forth in paragraph (h) below), such net profits to be divided equally among the 163 units of limited partnership interest, so that each Limited Partner shall receive one one-hundred-sixty-third (1/163) of the net profits or losses of the partnership for each unit of limited partneship interest owned by him, and, subject to the special allocation provisions of paragraph (b) of Article XXII, the Limited Partners shall bear 100% of the losses of the partnership, except as provided in paragraph (c) of this Article. (b) At the time when total distributions from the partnership to each Limited Partner are equal to $1,167 for each unit of limited partnership interest owned by him, the participation of each Limited Partner in any further net profits and losses of the partnership shall be terminated and he shall have no further *314 interest in the partnership, and the General Partners shall divide the net profits, and bear the net losses as follows: John W. Mangham
80%
David Townsend
20%
* * *
(h) Advances Against Future Profits: In addition to reimbursement expenses, the General Partners shall receive advances against future profits during the organizational and construction phases of the initial project of the partnership; provided, however, that should net profits be $190,221 or less, then all such advances shall be considered a noninterest-bearing loan from the partnership and must be repaid in full. In addition to the terms stated in the preceding sentence, the advances against future profits shall be received by the General Partners according to the following terms and conditions: John W. Mangham
$4,000 per month for the
eighteen (18) month period
beginning May 1973.
David Townsend
$1,000 per month for the
eighteen (18) month period
beginning May 1973.
(i) The foregoing notwithstanding, the following special allocations of deductions will be made when applicable: (1) any federal income tax deduction that may accrue to the partnership, by reason *315 of any capital interest received by any General Partner being treated as compensation for services rendered to the partnership by such General Partner, shall be allocated in its entirety to such General Partner receiving the interest for his services; and (2) notwithstanding any provision contained herein to the contrary, the federal income tax deduction for any expense of the partnership paid from funds advanced to the partnership by any partner for such purpose shall be allocated solely to such partner. * * *
ARTICLE XV Dissolution and Amendment
* * *
(d) Accounting and Distribution: Upon the dissolution of the partnership, if no election to continue the partnership is made as provided in paragraph (c) of this Article, the General Partners shall proceed to wind up and terminate the partnership. (1) The General Partners shall proceed to the orderly liquidation of the partnership assets and the proceeds of such liquidation shall be allocated and distributed in the following order of priority: (A) first, to the payment of the debts and liabilities of the partnership (other than any loans or advances made by any of the partners), and the expenses of liquidation; *316 provided that contributions to the capital of the partnership by any Partner, General or Limited, shall not be considered a debt or liability of the partnership; (B) second, to the setting up of any reserves which the General Partners may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the partnership or of the General Partners arising out of or in connection with any business of the partnership. Such reserves shall be placed in escrow, the escrowee to disburse them upon the direction of the General Partners in payment of any of the aforementioned liabilities, obligations and contingencies, and, at the expiration of such period as the General Partners shall deem advisable, the escrowee shall upon the direction of the General Partners distribute any balance remaining in the order hereinafter provided; (C) third, to the payment of any loans or advances made by any of the partners to the partnership, but if the amount available is insufficient, then pro rata on account thereof; (D) fourth, to the distribution to the General and Limited Partners of amounts equal to their respective capital accounts reduced by the aggregate of distributions *317 constituting a return thereof, as provided in paragraph (d) of Article X, and increased by the respective amounts of losses occurring prior to the completion of construction paid by them; provided that if the amount is insufficient, then pro rata according to the respective amounts of such contributions, but subject to the priorities between General and Limited Partners as set forth in paragraphs (d) and (e) of Article X hereof; (E) fifth, any proceeds of liquidation in excess of the amounts required for the payments, reserves and distributions as above provided shall be deemed profits and shall be distributed among the Partners, Limited or General, as provided in Article XI. (F) The provisions of this paragraph (d)(1) shall, however, be subject to the provisions of paragraphs (d) and (e) of Article X hereof.
(2) A reasonable time shall be allowed for the orderly liquidation of the assets of the partnership and the discharge of liabilities to creditors so as to enable the General Partners to minimize any losses otherwise attendant upon liquidation. (3) Each of the partners shall be furnished with a statement prepared by the partnership's then independent public accountants, *318 which shall set forth the assets and liabilities of the partnership on dissolution and on final liquidation. Upon the General Partners complying with the foregoing distribution plan (including payment in escrow, if any), the Limited Partners shall cease to be such, and the General Partners shall execute, acknowledge and cause to be filed a certificate of cancellation of the partnership. (4) The General Partners shall not be personally liable for the return of the capital contributions of Limited Partners, or any portion thereof. Any such return shall be made solely from partnership assets. (5) No partner shall have the right to demand distribution of assets other than cash upon dissolution. (6) In the event of the retirement, death or adjudication of bankruptcy or insanity of any of the General Partners during the continuance of this Agreement, or any renewal or extension thereof, an accounting shall forthwith be taken of the assets and liabilities of the partnership as of the date of the retirement, death or insanity of said partner.
(e) * * * ARTICLE XXI Charges and Expenses
(a) Organization Expenses: Unless this Agreement is terminated as provided in other *319 parts of this Agreement, all expenses of forming and organizing the partnership, offering and selling limited partnership interests, seeking and preparing appropriate investment properties and other expenses incurred in connection with organizing the partnership for business shall be an expense of the partnership, and shall be charged to the partnership. The General Partners shall be entitled to reimbursement from the partnership for any out-of-pocket costs incurred by them for such expenses. (b) Expenses of General Partners: The General Partners shall charge the partnership for all costs incurred by the General Partners in managing and operating the partnership and performing its duties as General Partners, including, but not limited to, the compensation of the General Partners' employees, attorneys, accountants, architects and consultants retained by General Partners during the period that they are employed on partnership business, and the cost of any equipment, supplies and other materials furnished by the General Partners to the partnership. Where any expenses of the General Partners relate to both partnership and non-partnership business, they shall be allocated by the *320 General Partners on any basis consistent with generally accepted accounting practices. Costs charged to the partnership shall be audited by the partnership's independent certified public accountants as part of their annual examination of the accounts of the partnership.The General Partners shall be entitled to reimbursement from the partnership for any out-of-pocket costs incurred by them for such expenses. (c) Advances Against Future Profits: The General Partners shall receive advances against future profits, subject to the terms and conditions of paragraph (h) of Article XI, as follows: John W. Mangham
$4,000 per month for the eighteen
(18) month period beginning in
May 1973.
David Townsend
$1,000 per month for the eighteen
(18) month period beginning in
May 1973.
(d) Other Expenses: All other expenses incurred in the business of the partnership shall be charged to the partnership, including, but not limited to, (1) cost of acquiring, owning and disposing of real and personal property interests; (2) fees of attorneys, accountants, engineers, construction contractors, architects and consultants; (3) costs of developing properties; (4) interest *321 on partnership borrowing; (5) taxes (except income taxes payable by the partnership); and (6) insurance premiums. (e) Allocations: All income, expenses, gains and losses shall be allocated in the same manner as the division of profits and losses specified in Article XI herein, except that any special allocations of deductions specified in Article XI shall be given effect.
* * *
The development of the condominium project was overseen by petitioner. The necessary financing to commence construction of the project was obtained from C.I. Planning of New York in the amount of $3,300,000 in late 1973 and construction commenced in December, 1973. Construction of the project was to be performed by an Orlando, Florida general contractor on a "turnkey" basis. After a few months of construction, the contractor breached his agreement with the limited partnership and abandoned the job, halting further construction for at least a year. Although petitioner had been led to believe that a contractor's payment and performance bond had been obtained, it was subsequently discovered that no such bond had been obtained. The limited partnership defaulted on the construction loan and in January, *322 1976, the property was deeded to C.I. Planning in lieu of foreclosure. C.I. Planning completed the construction and retained petitioner to manage the project and to sell the condominiums for it. Petitioner received $28,880 in 1973 and $55,000 in 1974 as "advances against future profits" from Search X. These "advances" were made so that petitioner would devote substantially his full time and effort to the project. In the event, however, that the net profits of Search X were insufficient to pay the limited partners 2.334 times their initial capital contributions, the agreement provided that all the "advances" were to be deemed noninterest bearing loans by the partnership to petitioner. The "advances" were labeled as an notes receivable on the partnership books and as an account payable on petitioner's books. No notes were given by petitioner to the partnership. Petitioner had free and unrestricted use of the monies received. By December 1975, the amount of "advances against future profits" paid to petitioner by Search X totaled $83,880. However, the agreement had provided for a maximum of $4,000 a month for 18 months or a total of $72,000. Accordingly, the partnership's notes *323 receivable account [2] was reduced by $11,880 and the payment was instead treated as reimbursement to petitioner for expenses he had incurred on behalf of the partnership. In early 1979, petitioner individually and on behalf of Search X sued certain attorneys claiming malpractice for the manner in which they had prepared the original development contract between the partnership and the construction contractor and in failing to properly obtain the necessary contractor bonding. The amended complaint in the proceeding provides that the following damages had occurred as a result of the attorneys' malpractice: * * * (a) SEARCH PROPERTIES X LIMITED has suffered loss of investment funds, loss of investment return and/or loss of profits and interest thereon; attorneys' fees; costs of additional litigation, including, but not limited to foreclosure suits and other civil and criminal suits for non payment, etc.; economic liability for loans/deficits; damage to business reputation and all other damages allowed by law. *324 (b) JOHN W. MANGHAM has suffered extreme mental anguish as a result of various civil and criminal actions filed against him; injury to personal and/or business reputation; attorneys' fees; costs of litigation including but not limited to foreclosure suits and the liability resulting therefrom; loss of investment funds; loss of profits; loss of funds necessary to maintain and/or assist in the completion of Casa del Sol Condominiums after foreclosure; economic liability for loans/deficits and all other damages allowed by law. (c) DAVID TOWNSEND has suffered extreme mental anguish as a result of various civil and criminal actions filed against him; injury to personal and/or business reputation; attorneys' fees; costs of litigation including but not limited to foreclosure suits and the liability resulting therefrom; loss of investment funds; loss of profits; loss of funds necessary to maintain and/or assist in the completion of Case del Sol Condominiums after foreclosure; economic liability for loans/deficits and all other damages allowed by law. * * * Thereafter, in late 1979, the insurance company for the defendant attorneys settled the various claims for a lump sum of $100,000. *325 The allocation of the $100,000 award was made in an October 1, 1979 letter from petitioner to his and the partnership's attorney, as follows: Search Properties X
$25,000
David Townsend
7,500
John W. Mangham
67,500
A contingent fee of 40 percent was payable to the attorney for the petitioner and the partnership out of the award, thereby proportionately reducing petitioner's net award to $40,500. Of this amount petitioner retained $6,622 and transferred the balance to the partnership. Of the $33,878 transferred, $23,625 was paid to First National Bank of Winter Haven for purposes not clear from the record. Upon the transfer of the $33,878 to Search X the petitioner obtained a release of any further obligation to repay the advances from the limited partners. In July 30, 1973, a limited partnership was formed under the laws of the state of Florida under the name of Search Properties XI, Ltd. (Search XI). Petitioner and David Townsend were the general partners. The limited partnership was formed for the purpose of developing and selling a residential condominium project. The Articles of Limited Partnership of Search XI provide in pertinent part: * * * *326 ARTICLE VI Initial Contributions to the Limited Partnership
The contributions agreed to be made upon the execution of this Agreement from the partners to the limited partnership are as follows: Name
Amount
Units
John W. Mangham
$1,000
David Townsend
200
David Townsend
5,500
1
James W. Scholl
27,500
5
Edward J. Klein
11,000
2
Lester L. Spade, as Trustee
for The Lester L. Spade Trust
11,000
2
The limited partnership interest shall be comprised of a total of ten (10) units at a per unit price of $5,500. * * * ARTICLE X Capital Interest
(a) The initial capital of the partnership shall be $55,000 in cash. The partnership shall have no other assets or anything of value. The partnership shall use its initial capital to seek investment in the development of real estate. (b) The initial capital interest in the partnership of each General Partner shall be as follows: John W. Mangham
40.80%
David Townsend
10.20%
The capital interest of the General Partners is subordinated to the capital interest of the Limited Partners until the Limited Partners have received the amount of distributions specified in paragraph *327 (e) below. (c) The initial capital interest in the partnership of each Limited Partner shall be as follows: James W. Scholl
24.50%
Edward J. Klein
9.80%
Lester L. Spade, as Trustee
for The Lester L. Spade Trust
9.80%
David Townsend
4.90%
(d) The capital interest in the partnership of each Limited Partner shall be reduced as each Limited Partner receives distributions of cash or other property from the partnership, proportionately, so that the capital interest in the partnership shall be reduced to five hundredths of one percent (0.05%) for each unit of limited partnership interest owned by a Limited Partner at the time he has received distributions from the partnership equal to twice the amount of his contributions to capital of the partnership, and the capital interest in the partnership of a Limited Partner owning more or less than an initial capital interest of 24.50% shall be a percentage which bears the same ratio to the initial capital interest of such Limited Partner as 1% bears to an initial capital interest of 24.50% at the time such Limited Partner has received distributions from the partnership equal to twice the amount of his contributions to *328 capital of the partnership. (e) Until each Limited Partner has received distributions from the partnership equal to twice the amount of his contributions to the capital of the partnership, the General Partners shall not be entitled to any distributions, except as provided in paragraph (h) of Article XI hereof. (f) After each Limited Partner has received distributions from the partnership equal to twice the amount of his contributions to capital of the partnership, General Partners shall receive distributions from the partnership at such times and in such amounts as they may determine among themselves. ARTICLE XI Profits and Losses
(a) Until the total distributions from the partnership to each Limited Partner are equal to twice the amount of his contributions to capital of the partnership, the Limited Partners shall receive 100% of the net profits of the partnership, except that General Partners shall receive advances against future profits as set forth in paragraph (h) below, such net profits to be divided equally among the ten (10) units of limited partnership interest, so that each Limited Partner shall receive one tenth (1/10) of the net profits or losses of the *329 partnership for each unit of limited partnership interest owned by him, and, subject to the special allocation provisions of paragraph (b) of Article XXII, the Limited Partners shall bear 100% of the lossee of the partnership, except as provided in paragraph (c) of this Article. (b) At the time when total distributions from the partnership to each Limited Partner are equal to twice the amount of his contributions to the partnership, the participation of each Limited Partner in any further net profits and losses of the partnership shall be reduced to five hundredths of one percent (0.05%) to each unit of limited partnership interest, and the General Partners shall then and thereafter receive 99.5% of the profits and 99.5% of the net losses of the partnership, and the General Partners shall divide the net profits and bear the net losses as follows: John W. Mangham
80%
David Townsend
20%
(c) Notwithstanding anything herein contained to the contrary, the liability of any Limited Partner for the losses of partnership shall in no event exceed in the aggregate the amount of his contribution to the capital of the partnership plus any liability on the part of Limited *330 Partners arising by way of Limited Partners' assumption of partnership debt so as to make Limited Partners jointly and severally liable as either primary or secondary obligors on such debt of the partnership. (d) The net profits of the partnership shall be distributed at such times and in such amounts as General Partners shall determine from time to time. (e) No interest shall be paid on the initial contribution of capital to the partnership or on any subsequent contributions of capital. (f) The gross profits of the partnership shall consists of all rents, royalties, net gains from the sale of partnership assets and any other receipts from operations of the partnership. (g) The net profits of the partnership shall consist of the gross profits as provided in paragraph (a) of this Article less all expenses of partnership operations, including but not limited to interest, office supplies expense, salaries, wages, legal and accounting fees and occupational licenses necessary in carrying on the operation of the partnership. (h) Advances Against Future Profits: The General Partners shall receive advances against future profits as follows: John W. Mangham
$4,000 per month beginning
July, 1973 and ending within
thirteen (13) months,
David Townsend
$1,000 per month beginning
in July, 1973 and ending within
thirteen (13) months.
*331 (i) The foregoing notwithstanding, the following special allocations of deductions will be made when applicable: (1) any federal income tax deduction that may accrue to the partnership, by reason of any capital interest received by any General Partner being treated as compensation for services rendered to the partnership by such General Partner, shall be allocated in its entirety to such General Partner receiving the interest for his services; and (2) notwithstanding any provision contained herein to the contrary, the federal income tax deduction for any expense of the partnership paid from funds advanced to the partnership by any partner for such purpose shall be allocated solely to such partner. * * * ARTICLE XXI Charges and Expenses
(a) Organization Expenses: Unless this Agreement is terminated as provided in other parts of this Agreement, all expenses of forming and organizing the partnership, offering and selling limited partnership interests, seeking and preparing appropriate investment properties and other expenses incurred in connection with organizing the partnership for business shall be an expense of the partnership, and shall be charged to the partnership. *332 The General Partners shall be entitled to reimbursement from the partnership for any out-of-pocket costs incurred by them for such expenses. (b) Expenses of General Partners: The General Partners shall charge the partnership for all costs incurred by the General Partners in managing and operating the partnership and performing its duties as General Partners, including, but not limited to, the compensation of the General Partners' employees, attorneys, accountants, architects and consultants retained by General Partners during the period that they are employed on partnership business, and the cost of any equipment, supplies and other materials furnished by the General Partners to the partnership. Where any expenses of the General Partners relate to both partnership and non-partnership business, they shall be allocated by the General Partners on any basis consistent with generally accepted accounting practices. Costs charged to the partnership shall be audited by the partnership's independent certified public accountants as part of their annual examination of the accounts of the partnership.The General Partners shall be entitled to reimbursement from the partnership for any out-of-pocket *333 costs incurred by them for such expenses. (c) Advances Against Future Profits.The General Partners shall receive advances against future profits, subject to the terms and conditions of paragraph (h) of Article XI, as follows: John W. Mangham
$4,000 per month for the
thirteen (13) month period
beginning in July 1973.
David Townsend
$1,000 per month for the
thirteen (13) month period
beginning in July 1973.
(d) Management Fee: In addition to the above, JOHN W. MANGHAM shall receive a one-time management fee of $10,000 payable in December, 1973. (e) Other Expenses: All other expenses incurred in the business of the partnership shall be charged to the partnership, including, but not limited to, (1) cost of acquiring, owning and disposing of real and personal property interests; (2) fees of attorneys, accountants, engineers, construction contractors, architects and consultants; (3) costs of developing properties; (4) interest on partnership borrowing; (5) taxes (except income taxes payable by the partnership); and (6) insurance premiums. (f) Allocations: All income, expenses, gains and losses shall be allocated in the same manner *334 as the division of profits and losses specified in Article XI herein, except that any special allocations of deductions specified in Article XI shall be given effect. During 1974 petitioner received $20,000 as "advances against future profits" from Search XI.Search XI did not deduct the payments. No notes were given to Search XI by petitioner. No repayment has ever been made. Insurance Commissions
On petitioners' joint Federal income tax return for 1973 three wage and tax statements were attached showing the following compensation amounts: Payor
Amount
Search Consultants Inc.
$6,000.00
Bankers Life Ins. Co.
127.55
American Life Ins. Co.
2,710.68
Search Consultants Inc. was a Subchapter S corporation owned by petitioner. The payments made by the insurance companies reflect commissions earned by petitioner during 1973 as an independent insurance agent. Although the amount on the wage and tax statements totaled $8,838.23, petitioner reported only $6,000 as wages on line 9 of the Form 1040 for 1973. By attachment the petitioner indicated that the balance ($2,838.23) was included in the gross receipts figure of his Schedule C from a real estate *335 and insurance management proprietorship. After an examination of the petitioner's books and records and his Subchapter S corporation's books and records, respondent determined that the insurance commissions were not included in the Schedule C gross receipts figure. OPINION Issue 1. Treatment of "Advances against Future Profits"
The first issue concerns the proper tax characterization of certain payments made by two real estate limited partnerships to a general partner.In 1973 petitioner was a general partner in Search X, a limited partnership. The partnership's purpose was to develop twelve waterfront acres (contributed by one of the limited partners and the other general partner) into a 94 unit condominium complex. The initial capital of Search X was $82,700 of which $1,000 had been contributed by petitioner. Under the articles of limited partnership the petitioner would not acquire any interest in the partnership's profits and losses until the limited partners received a predetermined return on their investment. The limited partners were allocated all the profits and losses in proportion to their initial contributions and were entitled to receive profits distributions *336 up to a maximum of 2.33 times the amount of their original contributions, at which time their entire interests in the partnership would be terminated. Thus, when the limited partners received their maximum return of $190,221 in distributions all their interests would be terminated and Search X would become a general partnership. Petitioner's share as a general partner would then be 80 percent of all profits and losses. Under the same articles the petitioner was entitled to receive $4,000 a month for an 18-month period during 1973 and 1974. Such payments were denominated "advances against future profits." Petitioner received $28,880 in 1973 and $55,000 in 1974 from Search X as "advances against future profits." However, $11,880 of the 1974 payment was reclassified at the end of that year as reimbursement to petitioner for his expenditures on behalf of Search X. This was done because the maximum amount of "advances against future profits" authorized in the limited partnership articles was $72,000 and petitioner had received $83,880 by the end of 1974. During 1973 and 1974 Search X had operating losses. The partnership did not treat the advances as a deductible expense but listed *337 them as notes receivable on its books. Petitioner, a cash basis taxpayer, treated the advances as loans. Under the partnership articles, if the necessary amount of net profits for distribution to the limited partners ($190,221) was not reached, although no time limit was specified, the "advances" were to be considered noninterest bearing loans to petitioner by the partnership. Petitioner supervised the development project for the partnership and was the only partner residing in the general work area. Petitioner was also paid $15,000 by the partnership in 1973 for his work in obtaining the necessary rezoning. This amount was reported by him on his 1973 income tax return. In late 1974, and continuing through 1975, the development project experienced construction difficulties and the partnership defaulted on a construction loan in early 1976. The limited partners were never repaid 2.33 times their contributions nor was there ever any year in which there were operating profits. In 1979, petitioner, individually and on behalf of Search X, sued the attorneys who had represented the partnership in their dealings with the project contractor. The insurance company for the attorneys *338 settled the various claims for a lump sum of $100,000. That amount was allocated pursuant to petitioner's instructions and resulted in the "payment" to the partnership by petitioner of $33,878. Such payment, occurring during the pendency of this proceeding, is alleged to represent a "partial repayment" of the Search X advance to petitioner. In 1973 and 1974 the petitioner was also a general partner in another real estate limited partnership, Search XI. Like its Search X counterpart, Search XI was formed for the purpose of developing and selling a condominium project. Petitioner's initial contribution was $1,000 out of total capital of $55,000. Petitioner held as a general partner a 40.80 percent capital interest from the start, but such interest was subordinated to the right of the investing limited partners to receive net profits distributions equal to twice their initial contributions. Petitioner had no interest in the profits and losses until the limited partners received twice their original contributions, at which time his interest in the profits and losses would increase to 80 percent and the limited partners' interests would decrease from 100 percent to one-half of one *339 percent. As in Search X, petitioner was to receive from Search XI "advances against future profits" in the amount of $4,000 per month for a 13-month period commencing in July, 1973. In 1973, petitioner received from Search XI a one-time management fee of $10,000. That amount was included in his 1973 gross income. In 1974, petitioner received $20,000 in such advances from Search XI. The 1974 payments were treated as a loan by the partnership and petitioner on their respective books and records. Unlike the Search X partnership, the partnership agreement was silent on the requirement of repayment of the "future profits" if net profits were insufficient to meet the necessary distribution level for the limited partners. Petitioner contends that the "advances against future profits" are loans and are not taxable in the year received. Section 707(a). Alternatively, he argues that if we do not find the advances to be loans, then the taxability of such advances is governed by section 731(a). In this regard petitioner asserts that his basis in both limited partnerships was equal to or in excess of the amount of "advances." Petitioner also argues that section 702(a), which governs *340 the taxation of a partner's distributive share of income or loss, is not applicable to the "advances" since neither partnership had an operating profit during the years in issue. Respondent, on the other hand, argues that the advances do not constitute loans but are fully taxable under section 61(a). In respondent's view the advances against future profits represent nothing more than advances against a future distributive share. Since petitioner was a cash basis taxpayer and no actual expectation of repayment of the advances was intended, respondent urges us to apply section 61(a). Alternatively, respondent argues that the advances are taxable as guaranteed payments under section 707(c). Respondent also contends that if neither section 61(a) nor 707(c) is applicable, then section 731 is applicable, but he refutes petitioner's computation of basis in the limited partnerships. In order to establish that the advances from Search X and XI constitute loans in 1973 and 1974 the petitioner must prove that there existed an unconditional obligation to repay the advances. Section 707(a). See also Rev. Rul. 73-301, 1973-2 C.B. 215. Whether such an unconditional obligation *341 exists is a factual question to be determined by examining various objective factors and the intent of the parties to the transaction. Some of the factors usually considered in making a determination of whether debt exists are (1) the existence of a sum certain, (2) the likelihood of repayment, (3) a definite date of repayment, and (4) the manner of repayment. Here the petitioner received $72,000 [3] from Search X and $20,000 from Search XI as "advances against future profits." Such advances were labeled as loans on the books of the partnerships and petitioner. The articles of limited partnership for Search X provided that such advances were to be considered noninterest bearing loans if the partnership failed to achieve a certain level of net profits necessary for distribution to the investing limited partners.Such a provision does not appear in the articles of limited partnership for Search XI. During the period that the partnerships were to develop their properties the petitioner had no obligation to pay interest on the advances nor was any set date of repayment required. Repayment in Search X was specifically geared to the failure of the partnership to make required distributions *342 of net profits to the limited partners, although there were no specified time limits for the distributions. If the partnerships did meet their primary obligations to the limited partners, petitioner contends that he would have repaid the advances by crediting such advances against possible withdrawals of his subsequent distributive share of partnership profits. Thus, petitioner maintains that he would have included in his gross income his full distributive share when the partnerships realized their income but would not have been entitled to withdraw as a current distribution an amount equivalent to the advances. In his view the payment represented an advance of his anticipated distributive share of profits in a later year. Such profits would have resulted from the anticipated sales of the condominiums built by each partnership. Apart from the loan language in *343 the Search X articles of partnership, petitioner further attempted to prove that a bona fide loan existed by showing partial repayment of the Search X advances. No repayment of the Search XI advances had been made. In this respect we note that the alleged repayment of $11,880 in 1975 to Search X was nothing more than a bookkeeping adjustment to bring the amount of advances in line with the maximum amount permitted under the Search X partnership agreement. Petitioner also contends that he repaid $60,878 to Search X in 1979. Such repayment was made possible by a malpractice settlement in which the Search X partnership, petitioner individually, and David Townsend (the other general partner of Search X) individually, received a lump sum of $100,000 for all their respective injuries. Petitioner allocated the award among the three plaintiffs giving John Townsend $7,500, Search X $25,000 and himself $67,500. Their attorneys charged a 40 percent contingent fee, which if applied equally results in fees of $3,000, $10,000 and $27,000, leaving a balance of $4,500 to Townsend, $15,000 to Search X and $40,500 to petitioner. Of the remaining $40,500, petitioner kept $6,622 and "transferred" *344 $33,878 to Search X. It is with respect to this payment that petitioner bases his claim of making $60,878 of restitution. Of this $60,878, $27,000 was used to pay attorney's fees and $23,625 was used to pay off a note to a Florida bank. According to our calculations, of petitioner's alleged $60,878 repayment of advances, $27,000 was used to pay off his allocable share of attorney's fees and $23,625 was used to pay off a note which petitioner has not established was ever a partnership obligation. This leaves approximately $10,000 for possible partnership purposes. It appears to us that the substance of the $60,878 transfer was to use the partnership as a conduit for the payment of his attorney's fees and other debts, and not as a repayment of advances. Moreover, we are not persuaded by petitioner's allegations that there was a valid debt existing for the advances which, when the deal went awry, the Search X limited partners, who had lost their entire investments, simply forgave petitioner from repaying the advances which might have gone to mitigate the limited partners' losses. Thus, we are not satisfied with the proof adduced by petitioner in support of his argument that the *345 "advances" were nontaxable loans. Absent the bookkeeping entries and the conditional repayment provision in the Search X partnership articles, there is scanty evidence that the payments from Search X and XI to petitioner constituted bona fide loans. Furthermore, petitioner's contentions that he has repaid the advances from Search X are misleading, inconclusive and unsupported by the record. Accordingly, we hold that petitioner has failed to satisfy his burden of proving that the "advances" were loans. Rule 142, Tax Court Rules of Practice and Procedure.
We think the advances should be treated as guaranteed payments under section 707(c). A guaranteed payment is a payment for services or use of capital that is determined without regard to the income of the partnership. Section 1.707-1(c), Income Tax Regs.
In both Search X and XI the petitioner was entitled to receive a certain amount of money each month for a certain period of time without regard to the income of the partnerships. This result is based on our not giving effect to the illusional contingency repayment provision in the Search X articles. Petitioner was clearly performing services for both partnerships and was, *346 in fact, the only local partner in the partnerships' business area. It is plain from this record that the petitioner was managing the day-to-day activities of the partnerships in securing financing, obtaining construction developers, overseeing construction at Search X and XI, performing the necessary rezoning, and in maintaining the partnerships' books and records. In this regard he testified that the payments from Search X and XI were made because he had given up his usual insurance business to devote substantial time to the partnership projects. Since petitioner and the partnerships are calendar year taxpayers, the guaranteed payments made by Search X during 1973 are includible in petitioner's taxable income for that year and the payments made by Search X and XI in 1974 are includible in his taxable income for that year. [4]
*347 Petitioner argues that if we do not treat the advances as loans, they are distributions of partnership property taxable solely under section 731(a)(1). [5] He further argues that he has sufficient basis in both his Search X and XI interests to prevent any taxation of the advances under section 731(a)(1). Petitioner cites section 1.731-1(c)(2) and 1.707-1(a), Income Tax Regs., to support his view. Unfortunately for petitioner, those provisions are inapposite. Section 1.731-1(c)(2), Income Tax Regs. provides: (2) The receipt by a partner from the partnership of money or property under an obligation to repay the amount of such money or to return such property does not constitute a distribution subject to section 731 but is a loan governed by section 707(a).To the extent that such an obligation is canceled, the obligor partner will be considered to have received a distribution of money *348 or property at the time of cancellation. This regulation does not say that an advance which is not a loan is a distribution. Rather it says that a loan will not be taxed as a distribution, but if a loan is canceled then it will be deemed a distribution at the time of cancellation. Since we have held that the "advances" did not represent loans, the regulation has no applicability to the instant situation. Likewise, section 1.707-1(a), Income Tax Regs., provides that if a partnership transfers money or property to a partner as a section 731(a) distribution, then section 707(a) will not be applicable. Crucial to the application of section 1.707-1(a), Income Tax Regs. is a finding that the transfer is a distribution within the meaning of section 731(a)(1). Under the circumstances of this case such an approach would tax credulity. Petitioner contributed $1,000 to the capital of each partnership and received $72,000 and $20,000, respectively, from Search X and XI, both of which had no profits. Those payments did not represent a return of petitioner's investment in the partnerships nor did it represent a distributive share of partnership profits. The payments, as we have *349 earlier indicated, represented nothing more than guaranteed payments for services rendered the partnerships. As such, section 731(a)(1) is inapplicable. Having concluded that section 707(c) is applicable to the payment in issue here, it is unnecessary to consider respondent's alternative contention that section 61(a) is applicable to the payments.
Issue 2. Insurance Commissions
Petitioner contends that $2,838.23 in insurance commissions received from Bankers Life Insurance Co. and American Life Insurance Co. are included in Schedule C of his 1973 joint Federal income tax return. Respondent contends that those insurance commissions are not so included. We have examined the ledger sheets submitted by petitioner with respect to his 1973 income from insurance commissions and real estate management fees and we are unable to determine whether the $2,838.23 is in fact included in petitioner's Schedule C. Accordingly, we conclude that the petitioner has failed to carry his burden of proof on this issue. Rule 142, Tax Court Rules of Practice and Procedure.
Issue 3. Section 6653(a) Additions To Tax
Section 6653(a) provides that if any part of the underpayment of tax is *350 due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. Respondent contends that the failure of petitioner to report the insurance commissions in 1973 and his characterization of the Search X and XI "advances" as loans are sufficient grounds to impose the additions to tax. We disagree. Petitioner attached his wage statements from the insurance companies to his 1973 Federal income tax return. Although he did not satisfy his burden of proving that the amounts shown on such wage statements were included in his Schedule C, petitioner did disclose the source of income, and we are willing to attribute the omission to an honest and good faith mistake. With respect to the partnership advances and the appropriate tax treatment to be given them, we are also unwilling to conclude that the petitioner negligently or intentionally disregarded the rules and regulations. The characterization of the payments was highly technical and open to question between petitioner, his accountant and his lawyer. Accordingly, we hold that the petitioners are not liable for the section 6653(a) additions to tax for *351 any of the years in issue. To reflect a conceded issue and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the tax years in issue, unless otherwise indicated.↩
2. Although the partnership's account books and records recorded petitioner's liability in the "notes receivable account", no actual notes were given or received.↩
3. Initially respondent determined that advances from Search X in the amount of $83,880 had been made over a two-year period. However, $11,880 of that amount represented reimbursement to petitioner for partnership expenses incurred. Accordingly, we have reduced the potential taxable amount from Search X to $72,000.↩
4. The partnerships did not deduct the amounts we are treating as guaranteed payments in 1973 or 1974 since petitioner, as managing general partner, had such payments listed as an "asset-advances to J.W.M." on the partnerships' balance sheets attached to their Form 1065 information returns. We need not reach the issue of whether the partnerships may deduct the guaranteed payments paid to petitioner since such a determination has no bearing on our determination of petitioner's deficiencies for 1973 and 1974. This is so because petitioner had no profits or losses interest in Search X and XI during the years in issue and did not share in any distributive share of partnership losses.↩
5. (a) PARTNERS--In the case of a distribution by a partnership to a partner-- (1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and↩